402 So.2d 1284 (1981)
TROPICAL SUPPLY COMPANY, INC., Appellant,
v.
Raymond VERCHIO, d/b/a R. Verchio & Sons, Appellee.
No. 80-1868.
District Court of Appeal of Florida, Fourth District.
August 12, 1981.
Rehearing Denied September 16, 1981.
*1285 Stephen A. Schorr of Korman & Schorr, Fort Lauderdale, for appellant.
Welcom H. Watson, Jr., of Watson, Hubert & Clark, Fort Lauderdale, for appellee.
HERSEY, Judge.
Tropical Supply Company, Inc. appeals from a final judgment in an action brought by it to enforce and foreclose a mechanics' lien for plumbing supplies sold to Dan-D Plumbing under an oral agreement, which supplies were incorporated by Dan-D into a condominium pursuant to a contract with the builder-owner, Raymond Verchio.
Appellee entered into a contract with Dan-D Plumbing to do all of the plumbing work in connection with the construction of a condominium apartment building. Dan-D then made arrangements with appellant Tropical to furnish the plumbing fixtures and supplies that would be required to perform the contract. The evidence shows that plumbing material charges of approximately $93,000 were posted on the books of Tropical for this project.
During the initial phases of construction Tropical served a Notice to Owner pursuant to Section 713.06, Florida Statutes (1977) to protect itself should it later be found necessary to file a claim of lien. Then, as testified to by George Brownlow, the president of Tropical, another step was taken to protect Tropical's interests:
Q Fine. All right. How did you receive payment on this job?
A How did we receive payment on the job? Well, let's see. Well, I'll tell you. After we filed notice I went out and talked to Mr. Verchio and told him that we  this was our first dealing with Dan, and asked him if he would be so kind as to make joint checks inasmuch as we could see we could collect the money. He agreed to it.
And subsequently, he at times made joint checks and certain other times he did not. But when he did, sometimes he gave those checks to me, and sometimes he gave those checks to Dan-D.
Under this arrangement, joint checks in the approximate total amount of $118,000 were drawn by appellee, endorsed by the joint payees and credited to appellant's bank account.
Nonetheless, when the plumbing contractor's services were subsequently terminated by appellee for other reasons and prior to completion of construction, Tropical's ledger evidenced payment of only $82,000 of the total materials bill of $93,000.
Appellant's position on appeal as summarized in its initial brief is as follows:

*1286 Although Plaintiff [Appellant] complied with the Mechanics' Lien Law in all respects, Defendant [Appellee] completely ignored the Statute. Defendant testified that this was his first project in Florida and that he was totally unfamiliar with the law. The Defendant unquestionably failed to record a Notice of Commencement; failed to ensure that the Plaintiff, a lienor, was paid before the contractor on progress payments; failed to secure a Contractor's Affidavit prior to making final payments and failed to retain ten percent (10%) of the contract price until the final Contractor's Affidavit was received.
Plaintiff's position is that all payments made, whether by joint check or the two payments made directly to the contractor, were improper payments in the context of Section 713.06 and, therefore, do not satisfy Defendant's obligations to Plaintiff.
The final sentence of appellant's conclusion illustrates the fallacy of its position. The mechanic's lien law does not purport to change, except in a very limited way, the rights and duties arising out of a sale or a contract to pay money. That law does provide a security device in the form of a mechanic's lien to secure the payment of sums otherwise due and owing. It further isolates a source of funds for such payment, the balance due under the contract, where improper payments as defined in Section 713.06 have been made. It does not and never was intended to affect the debt itself.
We turn, then, to an appraisal of appellee's position.
In summary, appellee urges that appellant has been paid in full, pointing out that failure of the materialman to apply proceeds from the joint checks first to its own account is imprudent. Further, suggests appellee, this Court should adopt the California rule that a materialman, by endorsing a joint payee check, is deemed to have received the money due him. Post Bros. Construction Co. v. Yoder, 20 Cal.3d 1, 141 Cal. Rptr. 28, 569 P.2d 133 (1977). We need not reach the question of the validity or the desirability of the California rule.
Appellant approached appellee with the request that checks be made payable jointly to Tropical and Dan-D. The specific reason stated was "we could see we could collect the money." Joint checks properly negotiated exceeded $118,000. The total charges for materials supplied was $93,000. Appellant cannot now require appellee to reimburse it for amounts paid by it out of its own account to Dan-D. We thus agree with appellee that this account was paid in full.
Having decided the matter on that basis we do not consider whether there was or could be a waiver of the requirements of the mechanics' lien law under these circumstances. There is simply no debt to support a lien on the facts of this case.
Accordingly, we affirm.
AFFIRMED.
LETTS, C.J., and MOORE, J., concur.