WARNER, Judge,
dissenting.
I respectfully dissent. The majority states that Ferrerra testified that Southeastern had waived its right to be paid prior to furnishing a release. What the transcript reveals is that Ferrerra said “He [Paup] waived the joint check.” When he was asked whether Paup told him that Wilson would get the releases when Southeastern got its money, he said “Maybe he did say so, I don’t recall exactly.” Furthermore, Mr. Wilson himself testified that he was given the understanding from his subordinates that Southeastern would furnish them (Wilson) a release upon receipt of payment. (Emphasis added).
A waiver of the joint check as payment should not be confused with the waiver of a right of payment of the debt. In this case Southeastern had no right to compel the issuance of a joint check. Only Wilson had that right pursuant to Article 7 of their contract with R.L.P. which provides “the contractor reserves the right to make joint checks or separate payments to the subcontractor’s material suppliers ... if, in Robert F. Wilson, Inc.’s sole judgment, it is necessary to do so to insure payment of the above-named parties, or if the above-named parties have filed a Notice to Owner.” Other parts of the contract require the Subcontractor (R.L.P.) to submit releases of liens of all his materialmen (Art. 5, Attach. C), and give the contractor the right to make direct payments to R.L.P.’s materi-almen. (Condition 15 of Supplement to Contract).
In addition, the bond obligation imposes on Wilson the obligation to pay for alb materials and labor, and section 255.05, Florida Statutes (1987) gives the material-men a direct right of action against the contractor and his surety. Thus, as I see it, the right which Southeastern had was to look to Wilson for payment. The obligation which Wilson had was to see that all materialmen were paid, and it had a variety of methods under the contract to accomplish this.
Even assuming that it was Southeastern who through Snow said, “Issue a joint check,” and then agreed not to require the joint check as a means of payment, that certainly doesn’t amount to the relinquishment of the right to look to Wilson ultimately for payment. In fact, even Mr. Wilson testified that he understood Southeastern would only give a “release of lien” for the amounts it received.
Furthermore, the joint check, even if issued, would not constitute payment or *262 tender as was found by the trial court until that check is received and endorsed or negotiated by Southeastern as a payee. See Tropical Supply Co., Inc. v. Verchio, 402 So.2d 1284 (Fla. 4th DCA 1981). Until such time, it is the property of all of the payees and as such could not constitute payment to Southeastern alone. C.f. Hendry v. Benlisa, 87 Fla. 609, 20 So. 800 (1896).
In my opinion neither the evidence nor the law supports the trial court’s decision, and therefore I would reverse.